Jess BASNETT, as Personal Representative of the Estate of Henry C. Monroe, and Shirley A. Monroe, Plaintiffs-Appellees,

v.

VISTA VILLAGE MOBILE HOME PARK, James K. Thompson, and D.W. Holdsworth, Defendants-Appellants.

No. 82CA0974.

Colorado Court of Appeals, Div. III.

Aug. 30, 1984.

Rehearing Denied Oct. 11, 1984.

Certiorari Denied May 28, 1985.

Norman Aaronson, Boulder, for plaintiffs-appellees.

Allen, Foreman & Mueller, Norman R. Mueller, Denver, for defendants-appellants.

METZGER, Judge.

Defendants appeal the trial court's judgment awarding compensatory and exemplary damages to the estate of Henry C. Monroe for fraudulent concealment and finding that there had been a breach of a lease provision concerning subletting. They allege the evidence was insufficient to sustain the fraudulent concealment claim and punitive damages award, and argue that the trial court misapplied the law in finding that they had breached the lease. We affirm.

In August 1979, Shirley and Henry Monroe purchased a mobile home located in Vista Village, a mobile home park in Boulder, from John Pollock, a mobile home broker. Pollock had purchased and resold over 50 mobile homes in Vista Village, and had never resided in any of them. The Monroes signed a lease with Vista Village for the mobile home space during a meeting with defendant James Thompson, the manager of Vista Village.

In February 1980, the Monroes advised Thompson that they were purchasing a mobile home in another park, that they planned to sell their mobile home in Vista Village, and that they contemplated selling it back to Pollock. Thompson indicated that, upon sale, the mobile home would have to be removed from Vista Village

because defendant D.W. Holdsworth, the owner of Vista Village, wanted it out of the park. Thompson gave Mr. Monroe a letter from Vista Village to its tenants dated April 1979, outlining Vista Village's policy regarding the sale of mobile homes. The letter provided, in pertinent part, that mobile homes constructed prior to 1973 would have to be moved from Vista Village upon resale, since they were particularly susceptible to wind damage. Holdsworth testified at trial that he had determined that the Monroe's mobile home should be removed from Vista Village prior to their purchase. However, this information was not conveyed to the Monroes until they sought and were refused permission to sell the mobile home in February 1980.

Pollock attempted to obtain resale permission from Thompson, who refused, stating that the Monroes were not good tenants because Mr. Monroe was a "troublemaker." The Monroes tried to sell the home, but the lack of available lots in other mobile home parks and the expense of moving the home prevented any sales.

The Monroes proceeded with their purchase of a second mobile home in another park and moved from Vista Village. In June 1980, they brought this lawsuit alleging that defendants had fraudulently concealed and negligently misrepresented Vista Village's policy prohibiting the on-site sale of their mobile home.

The trial court found that defendants had committed the tort of fraudulent concealment in failing to disclose their policy as to the Monroe mobile home, and awarded actual and exemplary damages against Holdsworth and Thompson. Additionally, the trial court found that Holdsworth and Vista Village had breached the lease with the Monroes by unreasonably withholding consent for an assignment or subletting of the mobile home pending sale, and awarded damages.

## I.

Defendants contend that the evidence was insufficient to support the court's finding of fraudulent concealment. We disagree.

■ The elements of fraudulent concealment are: 1) the concealment of a material fact that in equity and good conscience should be disclosed; 2) knowledge of concealment; 3) ignorance of the fact by the one from whom it is concealed; 4) intention that the concealment be acted on; and 5) action on the concealment resulting in damages. *Ackmann v. Merchants Mortgage & Trust Corp.,* 645 P.2d 7 (Colo.1982).

■ The trial court found that since the defendants' resale policy concerning the Monroes' mobile home directly affected its resale value, it was a material fact which in equity and good conscience should have been disclosed. This policy was not inferable from the lease itself, and the Monroes first learned of the policy from the letter delivered to them in February 1980, over seven months after they signed the lease. The trial court further found that defendants "unequivocally" intended that the Monroes act on the concealment, since they knew that the mobile home space would be made less attractive if the policy were disclosed. Mrs. Monroe's unimpeached testimony established that knowledge of the policy would have precluded purchase of the Vista Village mobile home, since the mobile home's value was diminished by $1,385 because of the policy.

We conclude that the trial court correctly applied the law, and that its thorough and detailed findings are amply supported by the record. We will not disturb its judgment on review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## II.

Defendants next contend that there was insufficient evidence to support the trial court's award of exemplary damages for fraudulent concealment. Again, we disagree.

■ The sufficiency of evidence justifying an exemplary damages award is a

question of law. *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980). Reasonable exemplary damages may be awarded where the fact finder determines that the wrong done to a person is attended by circumstances of fraud, malice or insult, or wanton and reckless disregard of the injured parties' rights and feelings. Section 13–21–102, C.R.S. For exemplary damages to be appropriate, proof must be beyond a reasonable doubt. Section 13–25–127(2), C.R.S.

■ Applying the reasonable doubt standard, the trial court incorporated its findings on the fraudulent concealment claim, and further found that the testimony of Holdsworth and Thompson was, in general, not credible. It concluded by stating:

"The Court believes that when Mr. Thompson and Mr. Holdsworth failed to disclose the assignment and sublease policy to Mr. Monroe, they acted fraudulently and in wanton and willful reckless disregard of his rights and feelings, choosing to treat his rights and feelings as unimportant and subservient to any arbitrary and capricious action they might take as landlords in the future to effectuate their policy of operating their mobile home park in a manner reminiscent of the 'company town' of another era."

We conclude that, here, the evidence more than withstands the strict level of scrutiny required.

### III.

Finally, Vista Village and Holdsworth contend that the trial court erred in concluding that they breached the lease by unreasonably refusing permission to assign or sublet. They argue that, under the lease, they retained the absolute right to prohibit absentee ownership of mobile homes in Vista Village.

Paragraph 7 of the lease provides in pertinent part:

"RENTAL HOMES NOT PERMITTED: Lessee agrees not to lease, sublet or assign any part of said premises nor of his mobile home located thereon without advance written consent of Lessor and not to allow any other person to occupy said premises hereby rented except in the case of casual visits of friends or guests."

Many leases include a requirement of the landlord's consent for subleases or assignments. Where this prohibition is not qualified, some courts have taken the view that consent may be refused arbitrarily and for any or no reason at all. Annot., 21 A.L.R. 4th 188. We alluded to this principle in *Carleno v. Vollmert Tire Co.*, 36 Colo.App. 446, 540 P.2d 1149 (1975).

This principle is experiencing significant erosion, however, and an increasing number of jurisdictions have held that, when a lease requires the landlord's consent prior to assignment or subleasing, but contains no language limiting the withholding of that consent, such consent may not be arbitrarily or unreasonably refused. *See, e.g., Fernandez v. Vazquez*, 397 So.2d 1171 (Fla.App.1981). The rationale underlying this approach is that a lease is a contract and, as such, should be governed by the general contract principles of good faith and commercial reasonableness. *See, e.g., Arrington v. Walter E. Heller International Corp.*, 30 Ill.App.3d 631, 333 N.E.2d 50 (1975); *Fernandez v. Vazquez, supra.*

The *Restatement (Second) of Property* § 15.2(2) (1977) adopts a middle ground. It provides:

"A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent."

■ In our view, that approach is preferable, since it incorporates the principles of fair-dealing and reasonableness and also preserves freedom of contract. According-

ly, we adopt it here and, to the extent that it conflicts with the principle alluded to in *Carleno v. Vollmert Tire Co., supra,* we decline to follow that case.

■ The lease here contained no stated limitation on the right of the lessor to withhold consent, nor does the lease, paragraph 7 notwithstanding, contain language evidencing a freely negotiated provision giving the lessor an absolute right to withhold consent. Indeed, the record shows that Holdsworth concealed the lessors intentions in this regard. Furthermore, the trial court found that the lessor's refusal to consent was arbitrary, made solely as a result of defendants' animosity toward Mr. Monroe, and was contrary to the past practices of defendants. Accordingly, the trial court properly ruled that the withholding of consent constituted a breach of the lease.

The judgment is affirmed.

KELLY and TURSI, JJ., concur.