575 A.2d 735

**Douglas JULIAN, William J. Gilleland, III d/b/a The Open Hearth, Inc.**

v.

**Guy D. CHRISTOPHER.**

No. 114, Sept. Term, 1989.

Court of Appeals of Maryland.

June 29, 1990.

■■■■■■■■■■■■■■■■■■■■■

2

Philip O. Foard (Jay D. Miller, White, Mindel, Clarke & Hill, on brief), Towson, for petitioners.

Charles E. Yankovich, Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ.

CHASANOW, Judge.

In 1961, this Court decided the case of *Jacobs v. Klawans*, 225 Md. 147, 169 A.2d 677 (1961) and held that when a lease contained a "silent consent" clause prohibiting a tenant from subletting or assigning without the consent of the landlord, landlords had a right to withhold their consent to a subletting or assignment even though the withholding of consent was arbitrary and unreasonable.

In 1983, in *The Citizens Bank & Tr. v. Barlow Corp.*, 295 Md. 472, 456 A.2d 1283 (1983), we noted that the issue was not preserved for appeal, but "[i]f the common law rule applied in *Klawans* is to be reconsidered, it will have to be done on a record which preserves the question for review." *Id.* at 486, 456 A.2d at 1290. We now have before us the issue of whether the common law rule applied in *Klawans* should be changed.

**4**

In the instant case, the tenants, Douglas Julian and William J. Gilleland, III, purchased a tavern and restaurant business, as well as rented the business premises from landlord, Guy D. Christopher. The lease stated in clause ten that the premises, consisting of both the tavern and an upstairs apartment, could not be assigned or sublet "without the prior written consent of the landlord." Sometime after taking occupancy, the tenants requested the landlord's written permission to sublease the upstairs apartment. The landlord made no inquiry about the proposed sublessee, but wrote to the tenants that he would not agree to a sublease unless the tenants paid additional rent in the amount of $150.00 per month. When the tenants permitted the sublessee to move in, the landlord filed an action in the District Court of Maryland in Baltimore City requesting repossession of the building because the tenants had sublet the premises without his permission.

At the district court trial, the tenants testified that they specifically inquired about clause ten, and were told by the landlord that the clause was merely included to prevent them from subletting or assigning to "someone who would tear the apartment up." The district court judge refused to consider this testimony. He stated in his oral opinion that he would "remain within the four corners of the lease, and construe the document strictly," at least as it pertained to clause ten. Both the District Court and, on appeal, the Circuit Court for Baltimore City found in favor of the landlord. The circuit judge noted: "If you don't have the words that consent will not be unreasonably withheld, then the landlord can withhold his consent for a good reason, a bad reason, or no reason at all in the context of a commercial lease, which is what we're dealing with." We granted certiorari to determine whether the *Klawans* holding should be modified in light of the changes that have occurred since that decision.

While we are concerned with the need for stability in the interpretation of leases, we recognize that since the *Klawans* case was decided in 1961, the foundations for that

holding have been substantially eroded. The *Klawans* opinion cited *Restatement of Property* § 410 as authority for its holding. The current *Restatement (Second) of Property* § 15.2 rejects the *Klawans* doctrine and now takes the position that:

> A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

Another authority cited in *Klawans* in support of its holding was 2 R. Powell, *Powell on Real Property.* The most recent edition of that text now states:

> Thus, if a lease clause prohibited the tenant from transferring his or her interest without the landlord's consent, the landlord could withhold consent arbitrarily. This result was allowed because it was believed that the objectives served by allowing the restraints outweighed the social evils implicit in them, inasmuch as the restraints gave the landlord control over choosing the person who was to be entrusted with the landlord's property and was obligated to perform the lease covenants.
>
> It is doubtful that this reasoning retains full validity today. Relationships between landlord and tenant have become more impersonal and housing space (and in many areas, commercial space as well) has become scarce. These changes have had an impact on courts and legislatures in varying degrees. Modern courts almost universally adopt the view that restrictions on the tenant's right to transfer are to be strictly construed. (Footnotes omitted.)

2 R. Powell, *Powell on Real Property* § 248[1] (1988).

Finally, in support of its decision in *Klawans,* this Court noted that, "although it, apparently, has not been passed upon in a great number of jurisdictions, the decisions of the courts that have determined the question are in very substantial accord." *Klawans,* 225 Md. at 151, 169 A.2d at 679.

This is no longer true. Since *Klawans,* the trend has been in the opposite direction.[1] "The modern trend is to impose a standard of reasonableness on the landlord in withholding consent to a sublease unless the lease expressly states otherwise." *Campbell v. Westdahl,* 148 Ariz. 432, 715 P.2d 288, 292 (Ariz.Ct.App.1985).

In his article, *Correctly Interpreting Long–Term Leases Pursuant to Modern Contract Law: Toward a Theory of Relational Leases,* 74 Va.L.Rev. 751 (1988), Alex M. Johnson, Jr., tracks the development of what he calls the "burgeoning minority position." Professor Johnson notes that:

> In 1963 Louisiana became the first state to adopt the minority position on alienability by holding in *Gamble v. New Orleans Housing Mart, Inc.* [154 So.2d 625 (La.Ct. App.1963)] that lessors must act reasonably in situations requiring the lessor's consent to a transfer.

Following Louisiana's lead, two common law jurisdictions, Ohio and Illinois, rejected the common law view and adopted the holding and rationale in *Gamble.* In 1977 the Alabama Supreme Court addressed the lessor's right to withhold consent unreasonably in a frequently cited opinion, *Homa–Goff Interiors, Inc. v. Cowden* [350 So.2d 1035 (Ala.1977)] and concluded that the common law view

---

**1.** At present the following courts have adopted the minority rule: *Homa–Goff Interiors, Inc. v. Cowden,* 350 So.2d 1035 (Ala.1977); *Hendrickson v. Freericks,* 620 P.2d 205 (Alaska 1980); *Tucson Medical Center v. Zoslow,* 147 Ariz. 612, 712 P.2d 459 (Ariz.Ct.App.1985); *Warmack v. Merchants Nat. Bank of Fort Smith,* 272 Ark. 166, 612 S.W.2d 733 (1981); *Kendall v. Ernest Pestana, Inc.,* 40 Cal.3d 488, 709 P.2d 837, 220 Cal.Rptr. 818 (1985); *Basnett v. Vista Village Mobile Home Park,* 699 P.2d 1343 (Colo.Ct.App.1984), *rev'd on other grounds,* 731 P.2d 700 (Colo.1987); *Warner v. Konover,* 210 Conn. 150, 553 A.2d 1138 (1989); *1010 Potomac Assoc. v. Grocery Manufacturers,* 485 A.2d 199 (D.C.1984); *Fernandez v. Vazquez,* 397 So.2d 1171 (Fla.Dist.Ct.App. 1981); *Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1981); *Jack Frost Sales v. Harris Trust & Sav. Bank,* 104 Ill.App.3d 933, 60 Ill.Dec. 703, 433 N.E.2d 941 (1982); *First Federal Sav. Bank v. Key Markets,* 532 N.E.2d 18 (Ind.Ct.App.1988); *Gamble v. New Orleans Housing Mart, Inc.,* 154 So.2d 625 (La.Ct.App.1963); *Newman v. Hinky Dinky Omaha–Lincoln, Inc.,* 229 Neb. 382, 427 N.W.2d 50 (1988); *Boss Barbara, Inc. v. Newbill,* 97 N.M. 239, 638 P.2d 1084 (1982).

was archaic in today's urban society. The Alabama court was the first to base its decision on the policy of alienability. The court balanced the right of the lessor to withhold consent unreasonably against society's interest in the alienability of commercial leaseholds, concluding that the "reasonable" alienation of commercial leasing space is paramount and predominates over any attempt by the lessor to restrict alienability arbitrarily.

Since *Homa–Goff,* fourteen states have reexamined their law on this issue. Six states have adopted or reaffirmed their adoption of the common law view, while eight states have rejected the common law view and restricted, either in whole or in part, the lessor's right to restrain alienability arbitrarily. The eight states that have adopted the minority position were influenced by the position taken recently by the American Law Institute (ALI).

The ALI endorses the minority position that a lessor must act reasonably when withholding consent to alienate the lease, absent express terms to the contrary. (Footnotes omitted.)

74 Va.L.Rev. at 761–63.

■ Traditional property rules favor the free and unrestricted right to alienate interests in property. Therefore, absent some specific restriction in the lease, a lessee has the right to freely alienate the leasehold interest by assignment or sublease without obtaining the permission of the lessor.[2] R. Schoshinski, *American Law of Landlord and Tenant* § 5:6 (1980); 1 *American Law of Property* § 3.56 (1952).

■ Contractual restrictions on the alienability of leasehold interests are permitted. R. Cunningham, W. Stoebuck, and D. Whitman, *The Law of Property* § 12.40 (1984). Consequently, landlords often insert clauses that restrict

---

2. The common law right may have some limitations. For example, a lessee may not sublet or assign the premises to be used in a manner which is injurious to the property or inconsistent with the terms of the original lease.

the lessee's common law right to freely assign or sublease. *Id.* Probably the most often used clause is a "silent consent" clause similar to the provision in the instant case, which provides that the premises may not be assigned or sublet without the written consent of the lessor.

In a "silent consent" clause requiring a landlord's consent to assign or sublease, there is no standard governing the landlord's decision. Courts must insert a standard. The choice is usually between 1) requiring the landlord to act reasonably when withholding consent, or 2) permitting the landlord to act arbitrarily and capriciously in withholding consent.

Public policy requires that when a lease gives the landlord the right to withhold consent to a sublease or assignment, the landlord should act reasonably, and the courts ought not to imply a right to act arbitrarily or capriciously. If a landlord is allowed to arbitrarily refuse consent to an assignment or sublease, for what in effect is no reason at all, that would virtually nullify any right to assign or sublease.

Because most people act reasonably most of the time, tenants might expect that a landlord's consent to a sublease or assignment would be governed by standards of reasonableness. Most tenants probably would not understand that a clause stating "this lease may not be assigned or sublet without the landlord's written consent" means the same as a clause stating "the tenant shall have no right to assign or sublease." Some landlords may have chosen the former wording rather than the latter because it vaguely implies, but does not grant to the tenant, the right to assign or sublet.

There are two public policy reasons why the law enunciated in *Klawans* should now be changed. The first is the public policy against restraints on alienation. The second is the public policy which implies a covenant of good faith and fair dealing in every contract.

■ Because there is a public policy against restraints on alienation, if a lease is silent on the subject, a tenant may freely sublease or assign. Restraints on alienation are permitted in leases, but are looked upon with disfavor and are strictly construed. *Powell on Real Property, supra.* If a clause in a lease is susceptible of two interpretations, public policy favors the interpretation least restrictive of the right to alienate freely. Interpreting a "silent consent" clause so that it only prohibits subleases or assignments when a landlord's refusal to consent is reasonable, would be the interpretation imposing the least restraint on alienation and most in accord with public policy.

■ Since the *Klawans* decision, this Court has recognized that in a lease, as well as in other contracts, "there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with the others." *Food Fair v. Blumberg,* 234 Md. 521, 534, 200 A.2d 166, 174 (1964). When the lease gives the landlord the right to exercise discretion, the discretion should be exercised in good faith, and in accordance with fair dealing; if the lease does not spell out any standard for withholding consent, then the implied covenant of good faith and fair dealing should imply a reasonableness standard.

We are cognizant of the value of the doctrine of *stare decisis,* and of the need for stability and certainty in the law. However, as we noted in *Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 459, 456 A.2d 894, 903 (1983), a common law rule may be modified "where we find, in light of changed conditions or increased knowledge, that the rule has become unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people." The *Klawans* common law interpretation of the "silent consent" clause represents such a "vestige of the past," and should now be changed.

## REASONABLENESS OF WITHHELD CONSENT

In the instant case, we need not expound at length on what constitutes a reasonable refusal to consent to an

assignment or sublease. We should, however, point out that obvious examples of reasonable objections could include the financial irresponsibility or instability of the transferee, or the unsuitability or incompatibility of the intended use of the property by the transferee. We also need not expound at length on what would constitute an unreasonable refusal to consent to an assignment or sublease. If the reasons for withholding consent have nothing to do with the intended transferee or the transferee's use of the property, the motivation may be suspect. Where, as alleged in this case, the refusal to consent was solely for the purpose of securing a rent increase, such refusal would be unreasonable unless the new subtenant would necessitate additional expenditures by, or increased economic risk to, the landlord.

## PROSPECTIVE EFFECT

The tenants ask us to retroactively overrule *Klawans*, and hold that in all leases with "silent consent" clauses, no matter when executed, consent to assign or sublease may not be unreasonably withheld by a landlord. We decline to do so. In the absence of evidence to the contrary, we should assume that parties executing leases when *Klawans* governed the interpretation of "silent consent" clauses were aware of *Klawans* and the implications drawn from the words they used. We should not, and do not, rewrite these contracts.

In appropriate cases, courts may "in the interest of justice" give their decisions only prospective effect. Contracts are drafted based on what the law is; to upset such transactions even for the purpose of improving the law could be grossly unfair. Overruling prospectively is particularly appropriate when we are dealing with decisions involving contract law. The courts must protect an individual's right to rely on existing law when contracting.

Ordinarily decisions which change the common law apply prospectively, as well as to the litigants before the court. *Williams v. State*, 292 Md. 201, 217, 438 A.2d 1301, 1309

(1981). What is meant by "prospectively" may depend on the fairness of applying the decision to cases or events occurring after the effective date of the decision. *See, e.g., Boblitz v. Boblitz*, 296 Md. 242, 275, 462 A.2d 506, 522 (1983) (abrogating interspousal immunity in negligence cases—decision applicable to the case before the court and causes of action accruing or discovered after the date of the decision); *Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 162, 497 A.2d 1143, 1162 (1985) (imposing strict liability on manufacturer of "Saturday Night Specials"—decision applicable to the case before the court as well as retail sales after the date of the mandate). It is reasonable to assume that landlords may have relied on the *Klawans* interpretation when entering into leases with "silent consent" clauses. This reliance should be protected. Contracts should be interpreted based on the law as it existed when they were entered into. Therefore, whether the *Klawans* case or the instant case governs the interpretation of a "silent consent" clause depends on whether the lease being interpreted was executed before or after the mandate in this case.

For leases with "silent consent" clauses which were entered into before the mandate in this case, *Klawans* is applicable, and we assume the parties were aware of the court decisions interpreting a "silent consent" clause as giving the landlord an unrestricted right to withhold consent.

For leases entered into after the mandate in this case, if the lease contains a "silent consent" clause providing that the tenant must obtain the landlord's consent in order to assign or sublease, such consent may not be unreasonably withheld. If the parties intend to preclude any transfer by assignment or sublease, they may do so by a freely negotiated provision in the lease. If the parties intend to limit the right to assign or sublease by giving the landlord the arbitrary right to refuse to consent, they may do so by a freely negotiated provision of the lease clearly spelling out this intent. For example, the clause might provide, "con-

sent may be withheld in the sole and absolute subjective discretion of the lessor."

■ The final question is whether the tenants in the instant case, having argued successfully for a change in the law, should receive the benefit of the change. There should be some incentive to challenge an infirm doctrine or seek reversal of unsound precedent. As the Supreme Court of Illinois has stated:

> At least two compelling reasons exist for applying the new rule to the instant case while otherwise limiting its application to cases arising in the future. First, if we were to merely announce the new rule without applying it here, such announcement would amount to mere *dictum.* Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it.

*Molitor v. Kaneland Community Unit District No. 302,* 18 Ill.2d 11, 163 N.E.2d 89, 97 (1959).

For these reasons, even though a decision is to have only prospective effect, this Court has applied the new rule to the case before it, unless it would be unfair to do so. *See Deems v. Western Maryland Ry.,* 247 Md. 95, 115, 231 A.2d 514, 525 (1967). *See also Lewis v. State,* 285 Md. 705, 404 A.2d 1073 (1979).

The tenants in the instant case should get the benefit of the interpretation of the "silent consent" clause that they so persuasively argued for, unless this interpretation would be unfair to the landlord. We note that the tenants testified they were told that the clause was only to prevent subleasing to "someone who would tear the apartment up." Therefore, we will reverse the judgment of the Circuit Court with instructions to vacate the judgment of the District Court and remand for a new trial. At that trial, the landlord will have the burden of establishing that it would be unfair to

interpret the "silent consent" clause in accordance with our decision that a landlord must act reasonably in withholding consent. He may establish that it would be unfair to do so by establishing that when executing the lease he was aware of and relied on the *Klawans* interpretation of the "silent consent" clause. We recognize that we may be giving the tenants a benefit that other tenants with leases entered into before our mandate will not receive. The reasons why we do so were well stated, though in a slightly different context, by Justice Brennan in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967):

> Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, militate against denying [these litigants] the benefit of today's decisions. Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making. (Footnotes omitted.)

*Id.* at 301, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND IN BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.