**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STAR ENTERPRISE,
Plaintiff-Appellee,

v.                                        No. 96-2667

WOOD JOINT VENTURE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Jillyn K. Schulze, Magistrate Judge.
(CA-96-1360-AW)

Argued: June 2, 1997

Decided: July 8, 1997

Before MURNAGHAN and LUTTIG, Circuit Judges, and TILLEY,
United States District Judge for the Middle District of North
Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Carlton M. Green, GREEN, LEITCH & STEELMAN,
College Park, Maryland, for Appellant. Griffin Vann Canada, Jr.,
MILES & STOCKBRIDGE, P.C., Rockville, Maryland, for Appellee.
**ON BRIEF:** J. Stephen McAuliffe, MILES & STOCKBRIDGE,
P.C., Rockville, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellee Star Enterprise brought this action seeking specific per-
formance of an option to purchase land pursuant to a lease. The mag-
istrate granted summary judgment in favor of Star and ordered Wood
Joint Venture to convey the property to Star for the purchase price of
$52,000. We affirm on the reasoning expressed in the magistrate's
opinion.

I.

Linda V. Wood and Texaco Inc., the original parties to the lease
in question, entered into the lease in 1964. Paragraph 2 of the lease
provided for a fifteen year term beginning on November 1, 1964.
Paragraph 13 of the lease further provided that the lessee had the
option to extend the lease for up to three additional five year periods.
Because the lease stated that rent was not to commence until all gov-
ernmental permits had been acquired for the construction of a gas sta-
tion, Texaco did not begin payment until September 1, 1967.

The lease was extended three times, but each extension notice was
based on a lease commencement date of September 1, 1967, rather
than the date of the original lease, November 1, 1964. Thus, the
extensions stated that they were from September 1, 1982, September
1, 1987, and September 1, 1992. Wood did not object to the exten-
sions and continued to accept rent.

The lease was assigned twice, pursuant to Paragraph 19, which pro-
vides that "lessee may assign or sub-let the premises, or any part
thereof, provided that lessee shall remain liable to lessor for the per-
formance of all of the terms hereof." Paragraph 22 further provides
that the agreement "shall be binding upon and shall inure to the bene-

2

fit of the parties hereto and their respective heirs, legal representa-tives, and assigns." Plaintiff Star Enterprise was the second assignee.

When Star Enterprise requested that Wood Joint Venture, the successor to Linda V. Wood, grant an exception to the lease for construction of a convenience store on the property, Wood Joint Venture advised Star that it considered the lease to be expired and the tenancy to be month-by-month. In response, on February 8, 1996, Star notified Wood Joint Venture that it was exercising its option to purchase the property pursuant to Paragraph 12 of the lease, which provides:

> (12) Options to Purchase. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the demised premises, together with all structures, improvements and equipment thereon, free and clear of all liens and encumbrances (including leases which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof . . . .

Wood Joint Venture refused to convey the property on the grounds that the option had not been timely exercised. Star therefore brought this action seeking specific performance.

II.

Star argues that it exercised the option during the third five-year extension of the lease, because each extension notice was based on a lease commencement date of September 1, 1967, and the last extension was from September 1, 1992 to September 1, 1997. Wood, on the other hand, argues that the lease states that it runs from November 1, 1964, is a fifteen year lease, and provides for only three extensions of five years each. Thus, Wood argues that the option could not be exercised more than thirty years after the lease was signed, i.e., could not be exercised after November 1, 1994.

The magistrate concluded that, regardless of whether the extensions were still in effect, Star could exercise the option to purchase because Maryland law permits a holdover tenant to exercise an option to purchase provided for in a lease unless the lease evidences an intent

to the contrary. See, e.g., Straley v. Osborne, 278 A.2d 64, 68 (Md. 1971) (stating that "a holdover tenancy is on all the terms and conditions of the original lease, including the option to purchase, which can be exercised during the holdover period unless a contrary intention is shown"). The magistrate correctly concluded that the lease in question indicates that a holdover tenant is permitted to exercise the purchase option, as Paragraph 18 provides that a holdover tenancy shall "be subject to all other terms and conditions of this lease, in the absence of a written agreement to the contrary."

Similarly, we find no error in the magistrate's conclusion that Star Enterprise, as an assignee, obtained the right to exercise the option. Maryland law provides that a lessee has the right to assign absent a specific restriction in the lease, Julian v. Christopher, 575 A.2d 735 (Md. 1990), and Paragraph 22 of the lease in question provides that "[t]his agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, and assigns."

We have read the briefs, heard oral argument, and given thorough consideration to the parties' contentions. Finding no error in the magistrate's opinion, we affirm on the reasoning that appears therein.

AFFIRMED

4