**ENFIELD EQUIPMENT CO. INC., et al.**

v.

**JOHN DEERE COMPANY.**

No. CIV. L–99–406.

United States District Court, D. Maryland.

Aug. 12, 1999.

**484**

David F. Albright, Jr., of Baltimore, MD, for plaintiff.

Shari Lynn Fleischman, of Washington, D.C., for defendant.

## MEMORANDUM

LEGG, District Judge.

Before the Court is a motion to dismiss part of count one and counts two, three, and four, filed by the defendant, the John Deere Company ("Deere"). For the reasons stated herein, the motion shall be, by separate Order, GRANTED.

### Background

This lawsuit arose from the sale by the plaintiff, Enfield Equipment Co, Inc. ("Enfield")[1] of its franchise to sell agricultural equipment manufactured by Deere. Enfield, through its majority owner, Mr. Richard Enfield, began investigating selling the business in the fall of 1996. At the time, Enfield claims several prospective purchasers expressed interest. (*See* Compl. at ¶ 3).

---

1. The complaint lists as plaintiffs both Enfield Equipment Co, Inc. and Mr. Richard H. Enfield, the majority shareholder of Enfield Equipment. The defendants moved to dismiss Mr. Enfield's claims on the basis that

Mr. Enfield's status as a shareholder did not confer standing to sue. The plaintiffs agree. Accordingly, the Court shall, by separate Order, grant the motion to dismiss all counts brought by Mr. Enfield.

Before any firm agreement was reached, Enfield contacted Scott Shipp, a Deere employee. Enfield alleges that Shipp stated that Deere would not approve the sale of the business to any party other than a company owned by Greg and Charles Rebar ("Rebar"). As part of the dealer agreement between Deere and Enfield, Deere retained the right to approve any assignment of Enfield's rights under the agreement. (*See* Dealer Agm't at ¶ 14, Ex. A to Def. Mot. to Dism.). Enfield understood Shipp's statement to mean that Deere would prevent Enfield from selling to any prospective buyer other than Rebar. (*See* Compl. at ¶¶ 6–8).

Enfield and Rebar negotiated and executed a purchase agreement in February 1997. When Enfield submitted the agreement to Deere, however, Deere refused to approve the deal as structured. Despite its alleged earlier advocacy of Rebar as a purchaser, Deere, when presented with the final sales agreement, claimed that Rebar did not have sufficient financial resources for the proposed purchase. Deere required the parties to negotiate a new agreement, which was signed in April 1997 and, thereafter, approved by Deere. Enfield alleges that the terms of the second agreement were much less favorable to Enfield.[2] (*See* Compl. at ¶ 13).

Enfield brought the present lawsuit to recover damages resulting from the limitations Deere placed on its ability to sell the business. Count one alleges breach of contract arising from the dealership agreement between the parties. Count two claims tortious interference with prospective advantage. Counts three and four allege intentional and negligent misrepresentation, respectively, with regards to Deere's representations that Rebar was an acceptable purchaser of the business. Deere has moved to dismiss part of count one and all of the remaining counts for failure to state a claim upon which relief can be granted.

**Discussion**

Ordinarily, a complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir.1995). The liberal pleading requirements of Rule 8(a) demand only a "short and plain" statement of the claim. In evaluating such a claim, the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The Court must determine whether Deere could be liable to Enfield under any of the legal theories in the complaint, assuming all of the allegations made were proven at trial. As described below, the Court finds that Deere's alleged conduct would not give rise to either tort or contract liability in these circumstances. Accordingly, the defendant's motion to dismiss shall be, by separate Order, granted.

*Breach of Contract*

In count one, Enfield alleges that Deere breached the dealer agreement between the parties by "specifically requiring Enfield and Enfield Equipment to deal only with Rebar and not other qualified purchasers." (*See* Compl. at ¶ 19). For this limitation to constitute a breach of the dealer agreement, Deere must, under the contract, be prohibited from arbitrarily withholding its consent to any assignment proposed by Enfield. The Court finds that no such limitation is imposed by the terms of the dealer agreement or implied by Maryland law.

As stated by Chief Judge Motz of this Court in *Berliner Foods Corp. v. The*

---

**2.** The final purchase price was lowered from $3 million to $1.7 million. (*See* Compl. at ¶ 12). Some of the difference, however, resulted from Enfield retaining title to some inventory, which Rebar would then sell on Enfield's behalf.

*Pillsbury Co.*, 633 F.Supp. 557 (D.Md. 1986),

> It is hornbook law that contracts calling for the performance of personal services, including distributorship agreements, which are silent regarding assignments, cannot be assigned without the prior consent the other contracting party.

*Id.* at 559. The contract at issue here, the dealer agreement, does include a specific assignment clause, which states, "this Agreement cannot be assigned by the Dealer without the prior written consent of [Deere]." (*See* Dealer Agm't at ¶ 14, Ex. A to Def. Mot. to Dism.). According to Deere, this language gives it the absolute right to refuse to approve a proposed assignment. If so, then the alleged limitation placed on Enfield's right to sell its business would not breach the dealer agreement.

Enfield argues that a covenant of good faith and fair dealing, implied under Maryland law as a term of the dealer agreement, limits Deere's right to withhold consent to a proposed assignment. The argument is based on *Julian v. Christopher*, 320 Md. 1, 575 A.2d 735 (1990). In *Julian*, the Maryland Court of Appeals held that a landlord could not unreasonably withhold permission to a proposed assignment of the lease or a sublease where the lease merely required the landlord's prior permission.[3]

The plaintiff seeks to extend the holding of *Julian*, which was limited to commercial leases, to cover distributorship agreements. The Court finds that such a extension is unwarranted.

■ As an initial matter, the implied duty of good faith and fair dealing in Maryland is of limited scope and only operates where it would not contradict a contract's express terms. *See Dupont Heights Ltd. Partnership v. Riggs Nat'l Bank of Washington*, 949 F.Supp. 383, 389–90 (D.Md.1996); *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F.Supp. 1263, 1275 (D.Md.1992). Against a background rule of non-assignability, the parties provided for assignments, but only with the approval of Deere. To imply a good faith limitation on this provision would work an impermissible change in the contract as written.[4]

In *Julian*, the Maryland Court of Appeals acknowledged that reading a reasonableness requirement into "silent consent" clauses substantially affected the legal relations between the parties. With regard to commercial leases, it justified this change in part on the public policy against restraints on alienation. *See Julian*, 575 A.2d at 739. While the plaintiff argues that similar policy considerations exist here, the Court finds no reason to vary from the contract as written. *See James v. Whirlpool Corp.*, 806 F.Supp. 835, 843–44 (E.D.Mo.1992) (declining to imply good faith requirement into contract allowing unfettered discretion to approve transfers). Accordingly, the Court finds that Deere had the contractual right to withhold consent, even for arbitrary reasons, to any proposed transfer and that the alleged restrictions placed on Enfield's proposed sale did not breach the dealer agreement.[5]

---

3. The *Julian* court specifically rejected its prior holding in *Jacobs v. Klawans*, 225 Md. 147, 169 A.2d 677 (1961) that "when a lease contained a 'silent consent' clause prohibiting a tenant from subletting or assigning without the consent of the landlord, landlords had a right to withhold their consent ... [even if] arbitrary and unreasonable." *Julian*, 575 A.2d at 736.

4. If desired, a contract can easily place a limitation on a party's right to withhold consent to assignment. *See e.g., Woody v. General Motors Corp.*, 9 F.3d 1107, 1109 (4th Cir. 1993) (finding that contract language required GM "not to act arbitrarily in considering proposed dispositions of principal assets").

5. Count one also includes two claims that Deere failed to follow through with its obligations under the dealer agreement regarding the financial aspects of Rebar deal. (*See* Compl. at ¶¶ 18–19). Deere has not moved to dismiss those aspects of count one, which remain in the case.

*Tortious Interference*

▮ In count two, Enfield alleges that Deere, by limiting its right to sell to others, committed the tort of interference with prospective advantage. To make out a claim of tortious interference with business relations,[6] a plaintiff must show:

(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 650 A.2d 260, 269 (1994) (internal quotation marks and citation omitted).[7] As part of an extended discussion of the Maryland law of interference with business relations, the *Alexander & Alexander* court also noted that it "has long recognized that self-interested commercial dealing has its proper place in the business world" and that "acting to pursue one's own business interests at the expense of others is not, in itself, tortious." *Id.*

Given this limited scope of tortious interference under Maryland law, the Court finds that Deere's alleged conduct cannot form the basis for an intentional interference claim. Even if Deere had breached the dealer agreement by unreasonably refusing to consent to an assignment, such action would not amount to the "improper or wrongful conduct" necessary to support a tortious interference claim. Accordingly, the defendant's motion to dismiss count two must be granted.

*Intentional and Negligent Misrepresentation*

▮ Counts three and four of the complaint seek to hold Deere liable for statements made by its employee, Shipp. Shipp allegedly encouraged Enfield to deal only with Rebar. Furthermore, Shipp allegedly "represented to Enfield that Rebar was honest, financially responsible and financially capable of purchasing all of the assets of Enfield Equipment." (*See* Compl. at ¶ 7). Enfield alleges that Deere, through its agent Shipp, either negligently or intentionally made these statements, which Enfield relied on to its detriment.

As a matter of law, Enfield could not have reasonably relied on these statements. *See Stroh Brewery Co. v. Allegany Beer Distributors,* 989 F.Supp. 740, 744 (D.Md.1996). Deere's approval rights were specifically stated in the dealer agreement, which could not be orally modified by Deere employees. In a transaction of this magnitude, Enfield had an independent responsibility to investigate Rebar's suitability as a purchaser and submit the proposed deal to Deere for approval. Because reasonable reliance is an element of both negligent and intentional misrepresentation, Enfield's claims in counts three and four are legally insufficient and must be dismissed.

### Conclusion

For the reasons stated above, this Court shall, by separate Order, GRANT the defendant's partial motion to dismiss. A scheduling order is attached.

### *ORDER*

For the reasons stated in the Memorandum of even date, the Court hereby:

(i) GRANTS the defendant's Motion to Dismiss (Dkt. No. 6);

(ii) DISMISSES count I to the extent that it addresses Deere's alleged restriction on Enfield's dealing with other qualified purchasers;

---

**6.** Maryland recognizes separate torts of interference with contractual relations and interference with business relations. *See K & K Management v. Lee,* 316 Md. 137, 557 A.2d 965, 973 (1989). The plaintiff has pled the broader claim of interference with business relations.

**7.** In *Macklin v. Robert Logan Assoc.*, 334 Md. 287, 639 A.2d 112 (1994), the Court restated the initial three elements of the historic test as requiring a plaintiff to prove "both a tortious intent and improper or wrongful conduct." *Id.* at 119.

(iii) DISMISSES counts II, III, and IV in their entireties;

(iv) DIRECTS the parties to comply with the accompanying Scheduling Order.