**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ENFIELD EQUIPMENT COMPANY,
INCORPORATED; RICHARD H. ENFIELD,
Plaintiffs-Appellants,

v.                                                          No. 99-2394

JOHN DEERE COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-99-406-L)

Argued: June 5, 2000

Decided: July 19, 2000

Before MURNAGHAN, WILLIAMS, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Foxwell Albright, Jr., HORN & BENNETT, P.A.,
Baltimore, Maryland, for Appellants. Todd Michael Stenerson,
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Washington,
D.C., for Appellee. **ON BRIEF:** Leslie M. Turner, Shari L. Fleish-
man, AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Washing-
ton, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Enfield Equipment Company (Enfield) appeals from the district court's order granting John Deere Company's (John Deere) motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The issue presented is whether Maryland law prevents John Deere from arbitrarily withholding its consent to a proposed assignment of a distributorship when the dealer agreement expressly prohibits such assignment "without the prior written consent of[John Deere]." (J.A. at 213.) We agree with the district court that under Maryland law John Deere may withhold its consent for any reason, and we affirm the district court's order granting the motion to dismiss.

I.

Because our review is from the district court's grant of a Rule 12(b)(6) motion to dismiss, we take the facts alleged in Enfield's complaint as true. See Vickers v. Nash General Hosp., Inc., 78 F.3d 139, 141 (4th Cir.1996). In 1971, Enfield began selling and servicing agricultural equipment as an authorized dealer for John Deere. Under the terms of the latest dealer agreement between the parties, entered into in October 1985, Enfield could not assign its dealership "without the prior written consent of [John Deere]." (J.A. at 213.) In the fall of 1996, Enfield informed John Deere that it was interested in selling its dealership, to which a John Deere employee responded that John Deere would only approve a sale of the dealership to a company owned and operated by Greg and Charles Rebar (Rebar). In February 1997, Enfield and Rebar reached an agreement that provided for the sale of all of the business's assets for approximately $3,000,000. John Deere, however, refused to consent to the deal as structured. Despite John Deere's earlier assurances that Rebar possessed the financial strength to purchase Enfield, John Deere claimed that Rebar did not have sufficient financial resources for the purchase as proposed. John

2

Deere thus required the parties to renegotiate the terms of the agreement. Enfield and Rebar then reached a new agreement, which Enfield claims was much less favorable to it than the original deal.

In January 1999, Enfield brought suit in Maryland state court, asserting breach of contract and tort claims against John Deere in an attempt to recover damages resulting from the restrictions John Deere placed upon Enfield's ability to sell the business. John Deere removed the case to the United States District Court for the District of Maryland, pursuant to 28 U.S.C.A. § 1441(b) (West 1994). John Deere then filed a 12(b)(6) motion to dismiss part of the breach of contract claim and all of the remaining claims, which the district court granted. The parties then consented to dismissal of the remaining parts of the breach of contract claim. On appeal, Enfield challenges only that portion of the district court's order that determined that the assignment provision in the dealer agreement gave John Deere the contractual right to withhold its consent to any proposed transfer for any reason, even an arbitrary one. Enfield argues that the implied covenant of good faith and fair dealing is present in every Maryland contract and required John Deere to exercise its discretion in a reasonable fashion. Because John Deere limited Enfield's freedom to assign its distributorship by allowing it to deal only with Rebar, and because John Deere later refused to consent to the original purchase agreement that Enfield negotiated with Rebar, Enfield claims that John Deere unreasonably withheld its consent in violation of Maryland law.

II.

We review a district court's dismissal under Rule 12(b)(6) for failure to state a claim de novo. See Republican Party v. Martin, 980 F.2d 943, 952 n.16 (4th Cir. 1992). We will affirm the district court's order only if it appears certain that Enfield could not prove any set of facts that would support its claim and entitle it to relief. See Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). For the reasons that follow, we agree with the district court that granting John Deere's motion to dismiss was proper. The express language of the dealer agreement between Enfield and John Deere prohibited Enfield from transferring its distributorship without the prior written consent of John Deere. Significantly, there was no "reasonableness" limitation provided in this assignment provision. Enfield asks us to read into the

3

contract such a limitation based upon the implied covenant of good faith and fair dealing. Enfield relies almost entirely upon <u>Julian v. Christopher</u>, 575 A.2d 735 (Md. 1990), as support for its position and argues that the Court of Appeals of Maryland would extend the rule announced in <u>Julian</u> to the distributorship context at issue here.**1** We disagree.

In <u>Julian</u>, the Court of Appeals of Maryland overruled its prior decision in <u>Jacobs v. Klawans</u>, 169 A.2d 677 (Md. 1961), and announced a new approach to interpreting commercial lease agreements that contain provisions prohibiting the tenant from assigning or subletting the premises without the prior written consent of the landlord. The <u>Julian</u> court held that for lease agreements entered into after its decision, landlords could no longer unreasonably withhold their consent when a tenant sought to assign or sublet the property. <u>See</u> <u>Julian</u>, 575 A.2d at 740. The <u>Julian</u> court grounded its decision in two articulated public policy considerations: (1) the policy against restraints on alienation; and (2) the policy implying a covenant of good faith and fair dealing in all contracts. <u>See id.</u> at 738. Although Enfield seizes upon this second public policy consideration as requiring courts to impose a similar reasonableness standard in assignment clauses like the one contained in its agreement with John Deere, our reading of <u>Julian</u> persuades us that were it not for the policy against restraints on alienation the Maryland court likely would not have implied a reasonableness requirement in that case. <u>See id.</u> at 736-39 (centering its discussion around property law and landlord-tenant concepts, rather than general contract principles). Indeed, Maryland state courts and other courts interpreting Maryland law have indicated that the implied covenant of good faith and fair dealing will not often serve to impose such limitations on bargained-for contract provisions. <u>See Dupont Heights Ltd. Partnership v. Riggs Nat'l Bank</u>, 949 F. Supp. 383, 389 (D. Md. 1996) ("To the extent that a duty of good faith and fair dealing exists in Maryland, it is of very narrow scope."); <u>Suburban Hosp., Inc. v. Dwiggins</u>, 596 A.2d 1069, 1076-77 (Md. 1991) (declining to extend an implied covenant of good faith and fair dealing to an at-will employment contract); <u>Waller v. Maryland Nat'l Bank</u>, 620 A.2d 381, 388 (Md. Ct. Spec. App.) ("The implied duty of

_____

**1** Alternatively, Enfield asks us to certify this question to the Court of Appeals of Maryland.

good faith does not change the terms of the contract."), vacated on other grounds, 631 A.2d 447 (Md. 1993). Because we find the Julian court's decision dependent upon the right to alienate property at issue there, and we have seen no indication from Maryland courts that they would be willing to impose a reasonableness limitation in contract provisions like the one at issue here,**2** we agree with the district court that John Deere was free to disapprove any proposed transfer for any reason.**3**

Our review of cases from other jurisdictions reveals that our holding is consistent with other courts' consideration of this issue. In Tay-

---

**2** We acknowledge that, if interpreted broadly, language in our recent opinion in Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership, No. 99-1554, 2000 WL 665636 (4th Cir. May 22, 2000), could be read as implying that all Maryland contract provisions that give one party the right to exercise discretion also include an implied reasonableness limitation on the manner in which that discretion may be exercised. See id. at *7 ("[A] promisor who undertakes to exercise judgment on behalf of a promisee impliedly agrees to exercise good judgment. . . ." (citing Julian v. Christopher, 575 A.2d 735, 738-39 (Md. 1990)). We think, however, that any statements in Eastern Shore that one might read as suggesting that John Deere must act reasonably in withholding its consent are better interpreted as statements that merely note the general principle recognized in Julian, which, as we have concluded above, does not apply in this context.

**3** As further support for our conclusion that Maryland law does not place a reasonableness requirement upon John Deere's ability to withhold its consent to a proposed transfer, we point out that the distributorship agreement calls on Enfield to work closely and "cooperate" with John Deere in maintaining the dealership. (J.A. at 208); see also Berliner Foods Corp. v. Pillsbury Co., 633 F. Supp. 557, 559 (D. Md. 1986) (noting that distributorship agreements are contracts "calling for the performance of personal services," which cannot be assigned without the consent of the other contracting party). Because of the personal nature of the distributorship agreement at issue here -- which involves a relatively close relationship between John Deere and its dealer that is not typically present between commercial lessors and lessees -- we are further convinced that to imply a reasonableness limitation in the dealer agreement would serve to frustrate John Deere's bargained-for power to prevent assignments of the distributorship to parties John Deere finds undesirable.

5

lor Equipment, Inc. v. John Deere Co., 98 F.3d 1028 (8th Cir. 1996), the Eighth Circuit interpreted South Dakota law in considering the virtually identical question with which we are faced. The Eighth Circuit concluded that the implied covenant of good faith and fair dealing did not upset John Deere's right to refuse consent to a proposed assignment, even if its refusal was unreasonable. **4** See id. at 1033-34. The court explained that the dealer agreement, which contained the same "no-assignment-without approval clause" at issue here, could have been written in a manner that would have required John Deere to act reasonably if that had been the intention of the parties. See id. at 1034-35. Similarly, in James v. Whirlpool Corp., 806 F. Supp. 835 (E.D. Mo. 1992), a federal district court applying Michigan law concluded that Whirlpool had "unlimited authority to refuse assignment" and held that the implied covenant of good faith and fair dealing would not limit that discretion. Id. at 840, 844. The contract at issue in James contained a provision similar to the one here that prohibited Whirlpool's distributor from assigning its rights"without the prior written consent of Whirlpool." Id. at 839. The James court recognized that the implied covenant applied to all contracts under Michigan law, but noted that the purpose of the covenant is to protect the reasonable expectations of the parties and should not be used to override express rights included as part of the contract. See id. at 843-44. We find these courts' reasoning persuasive and are confident that Maryland's highest court would agree. We do not consider its decision in Julian to undermine these general contract principles.

Finally, and perhaps most importantly, we point out that the Julian court took pains to limit the reach of its holding to leases entered into after the date that its mandate was issued. See Julian, 575 A.2d at 740. Julian was decided in June 1990. The dealer agreement between Enfield and John Deere that is at issue here was entered into in October 1985. At the time the parties in this case negotiated the contract, therefore, there was no Maryland opinion, in any context, suggesting

_____

**4** The Taylor Equipment court also noted a line of cases that would support the theory that although John Deere could act unreasonably in withholding its consent, it could not act dishonestly. See Taylor Equip., Inc. v. John Deere Co., 98 F.3d 1028, 1033 (8th Cir. 1996). Enfield does not allege that John Deere acted dishonestly in limiting Enfield's ability to assign its rights under the dealer agreement.

6

that the implied covenant of good faith and fair dealing imposed a reasonableness limitation upon a party's ability to withhold its consent under an assignment provision like the one agreed to by Enfield and John Deere. The Julian court's desire to protect the negotiated expectations of parties to contracts entered into before its decision and not to apply its ruling to those contracts warrants the conclusion that the Court of Appeals of Maryland would also not seek to extend Julian's application to contracts entered into prior to June 1990. Even if the Court of Appeals of Maryland were to extend the holding of Julian to the circumstances at issue here, therefore, we are confident that it would not do so in this case, where the contract was entered into pre-Julian.**5**

III.

For the foregoing reasons, we affirm.

AFFIRMED

_____
**5** Because we have found that the available Maryland state law adequately informs our resolution of this case, we also deny Enfield's motion to certify the question presented here to the Court of Appeals of Maryland. See Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994) (noting that we will certify questions to state courts "[o]nly if the available state law is clearly insufficient").